[No. 12608.  Department Two.  September 27, 1915.]

## B. Lang et al., Appellants, v. The City of Spokane, Respondent.[1]

Evidence—Parol Evidence—Written Contracts—Construction —Question for Court—Ambiguity.  Where a contract for the construction of a city sewer was plain and unambiguous as to the exact work to be performed, the rights and obligations of the parties are to be determined by the court from an inspection of the contract; and oral evidence that specified work and expense complained of were "not contemplated in the contract" is inadmissible as a conclusion.

Municipal Corporations—Public Works—Contracts—Extras— Construction.  A contractor constructing a city sewer cannot recover for extra expense in pumping water from the excavation, caused by the leaking of city water pipes, where, by numerous clauses in the specifications, he was required to keep the excavations free from water, to supply ample pumping machinery, to pay the whole cost of pumping and removing water from whatever source, and to assume all risks from the location of pipes or underground works or from unforeseen or unusual obstructions or difficulties, etc., etc.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered November 12, 1914, upon granting a nonsuit, dismissing an action on contract, tried to the court.  Affirmed.

*Skuse & Morrill,* for appellants.

*H. M. Stephens, Wm. E. Richardson, Ernest E. Sargeant,* and *Dale D. Drain,* for respondent.

Ellis, J.—This is an action to recover on a claim for additional expense incurred by the plaintiffs in the performance of a contract for the laying of a sewer for the defendant city.  In the complaint there is set out the written contract, by the terms of which the plaintiffs agreed to perform all the work and furnish all the material for the construction of the sewer, according to plans and specifications attached

[1]Reported in 151 Pac. 820.

to and made a part of the contract, for the sum of $37,990. A copy of the contract is attached to, and made a part of, the complaint. Performance by the plaintiffs in compliance with the contract is averred. It is also alleged that, by reason of the leaking of the city's water pipes and water mains laid in the vicinity, water accumulated in the ditches excavated for the laying of the sewer, so as to interfere with the blasting necessary in the performance of the work, and to such an extent as to require the plaintiffs to remove the water by pumping in order to perform the work; that the plaintiffs, immediately on discovering the leakage, notified the defendant, through its board of public works, mayor and council, and demanded that the water mains be repaired so as to prevent the water from flowing into the ditches, and that the defendant refused and neglected to do anything in that behalf; that, by reason of such refusal and neglect, the plaintiffs were put to extra cost and expense in the performance of the contract, to their damage in the sum of $1,500, payment of which was demanded upon the completion of the contract, which payment was refused.

The defendant answered, admitting the contract and its performance by the plaintiffs, but denying that the plaintiffs were caused to perform additional work not required or contemplated by the contract, by reason of the water mains and pipes leaking into the excavations made for the sewer, and specifically denying the other allegations contained in the complaint. As an affirmative defense, it was alleged that the pipes in question were old wooden ones which could only be repaired by replacing them with iron pipes; that, on receiving notice from the plaintiffs of the leakage, the board of public works ordered and directed the plaintiffs to desist from the performance of the contract until the conditions complained of could be remedied, but that the plaintiffs, in disregard of such order and direction, continued to work. It is then alleged, in substance, that certain of the specifications referred to in, and made a part

of, the contract gave the city power to make such order, and that whatever damages plaintiffs have suffered were caused by their own failure to conform to such order and direction. By the reply, the plaintiffs traversed this affirmative matter, except that they admitted the provisions in the specifications as therein set forth.

The cause was tried to the court without a jury. The contract and specifications were received in evidence. The plaintiffs then proffered evidence that, by the leakage of the city's water mains and pipes, they were caused to perform additional work and to incur expense "not contemplated in the contract," that they notified the city of these conditions and the city refused to remedy them. An objection to this evidence on the ground that the contract itself and the plans and specifications thereto attached and made a part thereof precluded a recovery for any hindrances, delays or damaages plaintiffs may have sustained in the performance of the contract by leakage from the city's pipes and mains, was sustained. The specifications, so far as directly material, are as follows:

"Specification No. 8, Contractor to Fully Complete Work:
"The contract for this improvement will include the whole cost of excavating the trenches and refilling the same, furnishing and laying the pipe, furnishing all materials and labor, manholes, catch-basins, flush-tanks, lamp-holes, flushing apparatus, setting of flushing apparatus, connecting with water mains, furnishing cement, sand, etc., restoring the streets to their original condition as directed by the engineer; hauling away surplus materials; the whole cost of pumping, bailing, planking, shoring and all other work necessary to make the whole job complete. and finished in every particular."

"Specification No. 10. Bidder to Judge Location and Amounts.
"Bidders must examine and judge for themselves as to the location of the proposed work, the nature of the excavation to be made, the amounts of materials required and the work to be done, etc."

"Specification No. 11. Location of Underground Work Not Guaranteed:

"The city does not guarantee the location of any underground works, and will not consider any claim for damages because of the interference of such works. Should the location of pipes or other underground objects be found to differ from that indicated on the plans, or if it shall be found necessary to modify the lines, grades or positions of the sewer, or the positions of any underground objects as above referred to, the contractor shall have no claim for damages or extra compensation on that account, but the city has made every effort to correctly show the location and nature of underground works."

"Specification No. 27. Interpretation:

"The finding and determination of the city engineer on all questions arising under the plans and specifications and contract for this work, as to materials and workmanship, and on all questions concerning the execution of the work or interpretations of the plans and specifications, shall be final and binding upon all parties interested in the contract for this improvement."

"Specification No. 29. Disputes and Litigation:

"To prevent all disputes and litigation it is further agreed by the contractor that the city engineer shall in all cases determine the amount of work to be paid for under the contract for this improvement, and his estimates and decisions shall be final and conclusive, subject to the approval of the board of public works."

"Specification No. 36. Contractor's Risk:

"It is understood that the whole of the work to be performed under the contract for this improvement is to be done at the contractor's risk and he is to assume the responsibility and risk of all loss or damage to the work or property on the line of said work, which may be due to negligence, or arising out of the nature of the work to be done, or from any unforeseen or unusual obstruction or difficulties which may be encountered in the prosecution of the same, or from the action of the elements, or for any cause arising by reason of this improvement."

"Specification No. 39. Claim for Extras:

"No claim for any extras under this contract will be considered or allowed by the board of public works or city engi-

neer, unless the same shall have been submitted in writing within twenty-four hours after such extra expense shall have been incurred and previous to the final acceptance of the work and passage of final estimate."

"Specification No. 40. Delays and Extension of Time:

"No charge will be made by the contractor for hindrances or delays from any cause whatever during the progress of the work, but such hindrances may entitle him to an extension of time for the completion of the work, sufficient to compensate him for such delay, such extension to be determined by the board of public works, providing the contractor shall give the engineer immediate notice in writing of the cause of such detention at the time it occurs, and no extension of time will be considered or allowed which has not been so presented."

"Specification No. 41. Suspending Work:

"The board of public works reserves the right to suspend the work on any part of this improvement, when in its judgment it may seem necessary to do so; but every effort will be made by the said board and the engineer to facilitate such work."

"Specification No. 51. Excavation Free From Water:

"The excavation will be kept free from water at the contractor's expense during the construction of the work, and he shall provide ample facilities in the way of engines, pumps, or other machinery to accomplish these results to the satisfaction of the engineer."

"Specification No. 52. Concrete Not to Be Laid in Water:

"No concrete or other work will be laid in water, and no allowance made for pumping or otherwise removing the water."

"Specification No. 53. Water in Trench:

"The excavation made for the socket of the pipe shall be filled with sand to support the cement firmly in place. When water accumulates in this excavation it must be removed before the joint is made."

The plaintiffs rested without any further offer of evidence. The defendant challenged the sufficiency of the evidence to sustain any judgment in the plaintiffs' favor, and moved for a dismissal of the action. The motion was granted, and a

judgment dismissing the action was entered. Plaintiffs appealed.

This is a case in which the admitted facts speak the law. The contract is not ambiguous on its face, nor is there anything ambiguous in the specifications attached thereto and expressly made a part thereof with like effect as if written therein. No evidence was offered tending to develop any latent ambiguity in either, nor was any such issue presented in the pleadings. In such a case, the rights of the parties and their obligations and duties thereunder is a question to be determined by the court from an inspection of the contract itself. The offer of proof, by oral testimony, that the work performed or expense complained of were things "not contemplated in the contract," was properly rejected. It merely called for a conclusion of the witness—a conclusion which the court alone was competent to draw from the contract.

The inquiry is thus reduced to an examination of the contract and the specifications. Almost any one of the specifications above quoted would seem to be sufficient to preclude a recovery for the work of pumping, here complained of as an extra under the contract. There can be no question that all of them, considered together, preclude any such recovery.

By the eighth specification, the contractors assumed the "whole cost of pumping, bailing, planking, shoring and all other work necessary to make the whole job complete and finished in every particular;" this without any exception or reservation. There is nothing whatever in the whole contract and specifications from which an implied exception of pumping necessitated by leaky water pipes can be read into this broad provision that the contract includes the *whole cost* of pumping etc. On the contrary, the tenth and eleventh specifications evince a clear intention to guard the city against just such claims as that here presented. The tenth provides that bidders must examine and judge for themselves the location and nature of the excavation and the

amount of material required and the work to be done. The eleventh further guards the city against the implication of a guaranty in the premises. It expressly declares that the city does not guarantee the location of any underground works and will not consider any claim for damages because of the interference of such works. Finally, the fifty-first, fifty-second and fifty-third specifications make it too plain for cavil that whatever pumping is necessary in the prosecution of the work, and from whatever cause, in the absence of positive and active negligence on the city's part, must be done at the contractor's expense. The fifty-first provides in the broadest terms that the excavation "will be kept free from water at the contractor's expense," and that "he shall provide ample facilities in the way of engines, pumps or other machinery to accomplish these results to the satisfaction of the engineer." The fifty-second declares that no allowance will be made "for pumping or otherwise removing water." The fifty-third makes it the positive duty of the contractors to remove water from the excavation before any joint is made. Not one of these guarantees that the city's water mains and pipes will not leak, or that the city will pay as an extra for pumping rendered necessary by any such leakage. We shall not discuss in detail the other specifications above quoted, further than to call attention to the plain fact that they all negative any assumption of liability on the city's part for any damages or delay resulting from such a cause as that here complained of.

The evidence offered was wholly insufficient to sustain any judgment for the plaintiffs, whether the action be regarded as one for breach of contract or for negligence. There was no evidence offered as to the kind of pipes laid, nor as to the nature of the defect if any which caused the leakage, nor as to whether the leakage was greater than might reasonably have been anticipated by the plaintiffs had they examined and inquired as to the location and character of the pipes and the length of time they had been in service, as they were

bound to do under the contract. There is no evidence, or offer of evidence, as to any negligence, deceit or lack of care on the city's part in the premises.

The judgment is affirmed.

MORRIS, C. J., FULLERTON, and MAIN, JJ., concur.